Good morning, Your Honors. Adam Axelrod here on behalf of Defendant and Appellant William Kamler Grigsby. This case, as Your Honors know, has the 2,000-foot residency restriction, but I'm not going to deal with that. I'd rather deal first and foremost with – Can I just ask one question? Sure. Just procedurally, what's its procedural situation here? In other words, is this another case in which there's a plain error argument or not? Ask for that issue. There was no objection to that residency restriction, that supervised release condition. There was no objection to it in the district court, if that's what Your Honor is asking. And was there notice of it, or did it just come out of them? You know, I honestly – I mean, there was notice of it because it was spoken about at the hearing. I don't know if it was provided in an earlier recommendation letter. It was not part of the pre-sentence report, as far as I know. Not part of the pre-sentence report, and you don't know if it was in the recommendation? Does Judge Gutierrez disclose the recommendation letter from the probation office? You know something? I'm sorry, Your Honor, but I'm just not sure about that. All right. We will find out. Thank you. Go ahead with the rest of your argument. Okay. I'd like to really start with what I think is the most important point in this case, and it has to do with the sadistic material enhancement. And it's really an issue of first impression, and I believe it's very important. Which enhancement? I'm sorry? Excuse me? Which enhancement? Oh, the sadistic material enhancement and the guidelines for this being a child pornography offense. And I really believe it's an issue of first impression. The Reardon case, which is obviously a pretty important case on this issue, touched on it but expressly declined to decide that particular issue. And I think it's critical because the way the guideline stands right now, the question is whether there is sadistic material or not. But there is no requirement. In fact, part of the commentary, it says that the defendant's intent is irrelevant. And I cited to the United States v. Hanby, which is a district court opinion out of New York by Judge Weinstein, where he talks about a similar condition in a case with regard to the stolen gun enhancement and goes through the history of the intent requirement and basically decides that because there is no intent requirement, it's unconstitutional. And that's the same argument that I would make in this case, that it's violative of the defendant's due process to impose an enhancement, which has a substantial penalty because it raises his prison term by years. In this case, I think it was 35 percent or something along those lines. So it's a significant number of years without deciding whether he had the particular intent. What sort of intent are you talking about? Well, the intent, in this case, it was a possession case. That was one of the things that differentiated this case from Weirden. Weirden was a shipping case. And in that situation, it was more appropriate to look at sort of an objective analysis and say, well, would this material appear sadistic to the average recipient? That makes sense in a shipping case. But that's a different thing. You see, an intent requirement, and I assume what Judge Weinstein was talking about, although I have not read the opinion, is did he intend to possess this material? I mean, did he, you know, was it just in some pile he had, or did he intend to possess it? But that's different. You're not really talking intent. You're talking about his subjective reaction to it, so to speak, or his motive. You're not talking really intent. Or that's a question. Are you really talking intent? I believe that I am talking about intent. In this case. But intent to what? The intent in this case would be to possess material, and I'm reading from the guideline, that portrays sadistic or masochistic conduct or other depictions of violence. But you're really saying sadistic or masochistic conduct is not an objective question. It's how he feels about it. Well, I think there is some definition for it. And you can't just go, well, you can't look at someone who's got a pile of photographs where kids are being tortured and say, oh, you know, you didn't actually feel that the material was sadistic. That, of course, is not going to fly. There is some definition. But here there is no attempt to look at Mr. Grigsby's intent. And you shouldn't be imposing a penalty on someone without the mens rea. There were particular photos that were being pointed to as being the ones that were sadistic, right? Right. Were those photos shown to the district court at the time that he decided they were sadistic? I don't believe those photos were shown to the district court. Did you ever challenge whether they were sadistic in an objective sense? I mean, for example, Reardon talks about prepubescent children. There's nothing in the record we have that says they were prepubescent children. On the other hand, you didn't challenge it, which makes me think that maybe they were, and that's why you didn't challenge it. Right. Well, I wasn't a trial attorney. I don't mean you. But that's correct, Your Honor. That's right. There were representations in the PSR about the ages of the children that were being portrayed in some of the images. Right. In the majority of the images. I think it was 6 to 14-year-old children. Yeah. I mean, I can't remember the ages exactly. I think maybe the youngest might have been 8, but I could be wrong. In these particular photos, the ones that were relied upon for this, there doesn't seem to be anything in the record. But on the other hand, there was no complaint about it. No, no, no. That's not true, Your Honor. There was a vehement complaint about it. It was part of the defense's sentencing memorandum saying that this sadistic material enhancement should not apply. But not on the grounds that it didn't comply with Riordan. Well, what defense counsel said was that she thought that Riordan did not make sense, really, and that somehow to decide, because Riordan was a case where they looked at one photo of anal penetration, or a few photos, I guess it was maybe one or two, and they decided that that in and of itself was sufficient. But the way I would distinguish Riordan, which I think is critical, and if you take a look at Riordan, it talks about that Mr. Riordan testified. Let me get the case. Well, more than that, what Riordan does say is the Court viewed the pictures as of weak and was well within its discretion to conclude that what was shown is necessarily painful and thus sadistic, and I gather that was not true here. Right. I mean, nobody, the Court did not, nor can we, look at these photos and say whether they were necessarily sadistic. Well, we've got descriptions of the photos in the record. But not with the age of the child, which could matter, obviously. We're talking about an 8-year-old or a 16-year-old as to whether it's necessarily sadistic. Right. And I'm just basing, I don't think that the district court looked at the photos in this case, but I'm just basing it on what the pre-sentence report investigation said, and that's the basis upon which the enhancement was applied. And it doesn't say anything about the kids being particularly young. It talks about three photos out of many hundred. But if I could just make a point about Riordan, one of the reasons that there was no real issue in Riordan, and the Court says this, that Riordan testified that the person who was asking him to ship material requested pictures of raping or killing children, and that from the images he looked at, he saw that they were the type of things he was asking for. And he admitted he had found the images on a website that catered to those involved in homosexual and sadistic masochistic activities. Was at least one of these photos not involving an adult male penetrating a child? Are you talking about NR? In this case, there were three photos. They all involved penetration. But one was a child by a child. One was a child by a child. One was a man by a child. One was a child, I think, by some sort of sex toy. So none of them directly are within what Riordan said. Riordan said an adult male penetrating a child. You're saying none of these three were that? Well, I'm not trying to differentiate Riordan on the basis of – Well, except that we are bound by Riordan. So the question is, is this what Riordan was about? And if your portrayal is accurate, I gather it's not directly what Riordan was about. I don't think so. But I think the main differentiation point between this case and Riordan is that Riordan involved a shipping case and that there was a substantial amount of evidence that what Riordan was trying to do was ship, admittedly, under anyone's definition, sadistic material, talking about material that had to do with raping and killing children. So he clearly had that intent. He admitted that. But here we don't have any way of discerning Mr. Gigsby's intent because it was never looked at. And it's something, when you go back to the guideline, and the guideline doesn't require it, that is a real problem for due process in my mind because you're then punishing someone without any requirement that they have the necessary evil intent. Can't you, if the person knows they have it and they have it in their possession, can't you infer from that that they intended to have it and wouldn't that at least shift the burden of going forward to the defense to come up and say, but I didn't think this was sadistic or I didn't realize these pictures were there or something? You know, Judge White, I agree with you to a point. Those analyses overlap the way that I see them. But if you have someone who's got a lot of materials and only a very, very small, small portion of them might be considered sadistic or masochistic because, you know, you both have a quality and a quantity issue. Some photos might be so egregious that even one of them you could say, okay, we can go ahead and assume it. But what you're really saying, I think, is can't you assume if someone has those photos in his possession that he then had the intent to have them? I think that's true in certain cases where the photos make up a large quantity of his total possession or they are of such egregious nature that you could assume it. But in certain cases, like Mr. Grigsby's, I don't think it's fair without trying to really look at his intent. So you would have to say that the guideline and the application note violate due process? Yes, I believe that's true because I think there's a long history in criminal jurisprudence of requiring someone to have a criminal intent that goes with their act. And on another level, it just doesn't make sense. Why are we going to punish people? There's plenty of cases out there with these horrible photos, so there's no shortage of them. But why are we going to punish those people that either didn't or may very well not have had that intent? The point is to punish the people that did. Would you explain to me again, because we've asked this before, but a sentence or two would be helpful. What intent exactly are you saying was missing? You're not saying he didn't know these pictures were there. I'm not saying he didn't know these pictures were there. Or intent to have. Right. I'm saying that the intent has to be, in a possession case, to possess material that is either sadistic or depicts violence. That's what the guideline says. So the intent has to be to possess that type of material. That's what I'm responding to. So having the photo, knowing you have the photo, and intending to have the photo, and it being, let's suppose this was exactly the photo in rear view. A photo that is objective. Or suppose it was a photo that was masochistic by anybody's standards. It was a child being whipped or something. Why does that meet the intent or not? It may meet the intent. But I think the problem is, in this case, there was never an examination of it. Of what? What's the it? Whether he had that intent. So you're making, so your argument is not, is your argument that he had to be sexually aroused by what was seen in these photos? Or it had to be sexually arousing? I'm really having a problem putting a finger on what intent you're saying is missing. Well, I think the intent is that my, the way I view it is that his intent had to be to possess that type of material. I don't think it was. That type of material. Sadistic or masochistic. But having the actual photos that are objectively in that category is not, and knowing that he had them and intending to have them doesn't meet that? Well, I guess, so there's two elements to the argument. On one hand, I think that the court never did look at defendant's intent specifically. And I think that's a requirement. But also, I'm saying that these photographs, when you look at the total picture of things, there's a very strong argument that these photographs would not lead to the determination that Mr. Grigsby had that intent. When you look at the total collection and you look at the nature of the photographs, and when you read the cases, you hear about descriptions of these photographs that are just abhorrent. This is not that case. So it's not one of those cases where you can say, well, look, look at these photographs, look how many he had. And there was never an attempt to assess his attempt. That's my real main primary argument. But I believe also if that was looked at, it would not be found. Is this a subjective or an objective test? Well, that's why I differentiate this from the Riordan decision. Because in Riordan, I think it might make sense to look at it objectively. Here, where you've got a defendant convicted of possession, and you're imposing an enhancement on him based on the possession of sadistic material, then it has to be his intent. It has to be his intent that you look at. You know, I just say with respect to the computer enhancement that, you know, there was evidence of the various forms of pornography that this man had, that the defendant had kept. But he was certainly not someone who was using the computer to obtain his child pornography. And so I think that, you know, one of the problems, and I think this ties into some of the whole problems with the child pornography guidelines, is that you have these type of enhancements that seem to apply almost in every case. And Mr. Grigsby's is one of those cases where there's a lot of evidence that would suggest that the enhancement probably shouldn't have applied. I mean, you know, considering the possibilities of using the computer to download child pornography, he had most of his collection in other forms, and there was no indication that he had a working computer and that he was using the working computer to look at pornography. Didn't the judge give a pretty detailed explanation of why, I've forgotten whether he or she came out with a sentence that he or she came out with, and a lot of these enhancement features were not things that seemed to be particularly important to the judge. I think they were calculated by the probation office. I understand, it was calculated by the probation office, and it reaches an offense level that one might argue is unreasonably high. But the sentencing that was done by the judge gave the reasons the judge imposed the sentence, and they didn't really seem tied to these particular features of the possession. Well, you know, he gave a sentence that was directly in line with the guidelines, so he may have not explicitly said that I'm imposing this sentence based on the guidelines, but he basically did that, so I would think that he followed the guidelines. Even in this case, the government was asking for 96 months, and he gave 121 months. So what exactly did he use? He had some Web TV thing, and he used it for something. What did he use it for? You know, it's difficult for me to fully understand it, and from the pre-sentence report, I've read it. I still don't completely understand it. I believe it's some sort of interactive device where you can use the TV as a sort of computer to go onto the Internet, but I honestly don't know. He must have gone onto the Internet. Well, he may have, but what I'm saying is his collection. It's not Web TV. Isn't that the Internet? You know what? I believe so, Your Honor. But all I'm saying is that's not the way he got his materials. But that's not a requirement for the guideline. Well, it is a requirement for the guideline because he asked if you're imposing an enhancement based on possession, the enhancement says that you used a computer or interactive. I thought, this is what I got out of it, that he did use the Web TV to get materials, and then he took a picture of it and had a hard copy because you couldn't download it, but he did access it through the Internet, through Web TV. Is that not what the understanding was? He may have. The one part that I would differ with you is that I don't think there was evidence in the record where it showed that he was obtaining pornography through the computer. Well, not through the computer, through the Web TV. Well, that's what I mean, through the Web TV. I mean, that's what I meant. What it says is if the offense involved the use of an interactive computer service for possession, transmission, receipt, or distribution, or for accessing with intent to view the material. It seems to pretty fairly cover the Web TV. Yeah, yes, if in fact he used that for those purposes. He had Web TV. You just said he used it to access. But I wasn't talking, all I said was that that's a device that can access the Internet, but I am saying looking at the record, that's not the way he obtained his pornography. Well, that actually wasn't the computer enhancement one of the ones in the plea agreement? It was, Your Honor. So aren't you kind of foreclosed from? Well, I think we have an uphill battle. The only thing I would say was that in the sentencing memorandum, the defense did object to it based on somewhat similar, but I understand it was part of the plea agreement. So let me move on just to a couple of other things. All right, but you're well over your time. Okay, okay. I would just say, let me just say, I think that the clear and convincing standard should have applied with regard to those enhancements, and I think that, again, goes back to the difficulty with these child pornography guidelines and that they're imposed seemingly automatically in these cases. Yeah, I understand that. I know we've had some dissents in our court in opinions involving sentencing and child pornography cases because it does seem that in every case there's a computer, in every case there's certain of these factors going on, and there are some people who disagree with the harsh sentences that are coming out of the child pornography, but that's the guideline that we're living with. That's true, and I think one way to deal with that is to really apply the intent requirement as it should be. So that's another way is just to go back and do, require the intent that should be there for the act to be criminalized. Thank you. Thank you very much, Counsel. Good morning, Your Honors. David Kerman on behalf of the United States. Your Honors, I'd first like to address the sadism enhancement, and directing my attention to Judge Berzon's questions, having now briefed this issue at the district court and at this court, I am still not clear on what the intent is that the defendant claims is necessary in this case, and in fact, going through the briefing, it seems to be a moving target. At first it was was the child actually harmed by the pictures, then it moved on to whether or not the defendant actually got any enjoyment by looking at what was depicted in these pictures, and today it seems to be just put the word intent in front of the possession. Let me ask you something to back off for a moment from this question, although it may be related. Are the actual photos in this case directly covered by ruin, i.e., are they adult males penetrating children? Your Honor, I know they are adult males penetrating minor children. I thought that's not even true, at least from his description. It didn't seem to be true. One is a minor penetrating a minor. One is a sex toy, and another one, he said, and this I don't know, was a child penetrating an adult male rather than the other way around, that I don't know. Your Honor, it's in the probation report, and I'm reading from paragraph 45. One of the images depicted a minor male penetrated anally with an artificial sex toy. Another image depicted a minor male engaged in anal penetration with another minor male. Another image depicted an adult male engaged in anal penetration with a minor male. That's saying in what direction? Your Honor, it says an adult male engaged in anal penetration with a minor male. With rather than of. Your Honor. So you can't tell from this list that any of the three are sobriety and rearing. Your Honor, I believe that there is a little bit of ambiguity with respect to the last one, but my reading of the last one is an adult male penetrating a minor. Did the district court ever see the photos? Your Honor, the district court did not see the photos, and really there was never any dispute, and in fact the defense attorney at sentencing agreed that the photos were covered by the rearing case. And there's never. So a back to a play error problem, basically. Yes, Your Honor. They always contested whether or not the sadism enhancement should apply based on the intent. There was never any dispute with respect to the underlying facts, the photographs at issue, whether or not they were covered by the rearing case. But it sounds like at least two of them definitely weren't, and the third one's unclear. Well, Your Honor, in the first one, I mean. Unless you're saying that any time you have minor children having any kind of penetration, that's sadism, which is not what rearing says. Your Honor, well, the first one says a minor male penetrated anally with an artificial sex toy. Right. Who knows what that was? Your Honor, I think that, as this court said in Reardon, that a reasonable person would conclude that if a minor male is penetrated anally, that that is sadistic, and that would cause them pain. That's not what it said, actually. It said by an adult male.  Yes, Your Honor. But the point here is that there was never any – this issue was not raised before the district court, whether or not the direction of the anal penetration. Do you really think that this was what Congress – what the Sentencing Commission originally had in mind by the sadism section? Your Honor, I do. In this case, when a minor male is penetrated anally, it causes them more pain than other types of child pornography, causes more societal harm, and these are the kids that are hurt the most. But that's not the question. The question is, is this what one would ordinarily call sadism or masochism as opposed to something else? I believe it would. I believe that this causes children pain, and that pain is caused at the enjoyment of an adult. And in that sense, it does fall, and I do think that's what they intended. And I believe that's what this Court found in the Reardon case. But just taking a step back from the intended – How much difference does this enhancement make? Your Honor, it's a significant difference. It's a four-point enhancement. I believe the defense counsel said it's roughly a third higher sentence. It's a significant amount of time. There's no question. But taking a step back, there's no question that there's mens rea required with respect to the crime of possession of child pornography. There's also no question that the intent under the guidelines is not required, and that's set forth in Application Note 2 of that particular guideline. In fact, that guideline application note appears directed at some circuit splits where some required intent and others did not, and subsequent to those cases, the guideline was added that it applies regardless of whether the defendant specifically intended to possess such materials. Turning to the constitutional argument, Your Honor, the guidelines are full of the similar type enhancements that don't require intent. A person engages in a drug crime. They pick up a suitcase full of drugs. It doesn't matter if they thought it was 5 pounds or 50 pounds. They're on the hook for it. Now, taking a step back from that, the resolution to all these problems and the resolution to the number of images or the seriousness of the images could all be resolved with Booker, and they're entitled to argue that. The guideline applies because the enhancement fits. It's sadistic or, you know, it's this amount of drugs. But, you know, if there's one person and he possesses one image and it's barely sadistic, then he's free to argue that to the district court, and the district court is free to do whatever they want after they make that argument. So the reason this is an unconstitutional and the answer to basically everything that the defendant raised with respect to this enhancement in particular is Booker. Request the Booker variance, argue your facts to the court, and the court's free to accept or reject those facts based on a case-by-case basis. So if you're suggesting that the way that the defense attorney here should have challenged the sadistic enhancement would be to show the pictures to the judge, right, and say we don't think this is sadistic. Well, Your Honor, if they wanted to challenge the application of the guideline, that's one way that they could have done it. What I was just suggesting is if he's saying that he didn't really intend to have them or it's just barely sadistic, that he could have argued those points to the district court, and the district court could have taken those facts into account under Section 3553A and placed less weight on that guideline or just placed no weight on it. The district court could have done that. The defendant's free to do that. This Court has repeatedly made clear that district courts are free to disagree with the guideline, and this guideline in particular. Can I change the subject for a minute? With regard to the 2,000 feet, what's the procedural situation here? Your Honor, the procedural situation here is that in the plea agreement, like in one of the cases previously discussed, there was a 100-feet waiver. The district court published — A 100-feet presence, and was there also this view not live within — Your Honor, I think it was 100 feet with respect to the appeal waiver in the plea agreement. The district court — 100 feet for living or 100 feet for being there? Your Honor, I'm not positive. I don't remember. There was a letter from the probation officer which included its recommendation and which included these conditions, and in that letter, the 200,000-foot restriction — No, 2,000 feet. The 2,000 — He said 200,000 feet. That would be worse. Yes, Your Honor. I understand. The 2,000-foot restriction was included, and there was absolutely — That was revealed? Yes, Your Honor. It's the — not the view. Just the — I think the 2,000 feet has replaced the view restriction. I'm asking whether the 2,000 feet was noticed — was given to — Your Honor, I believe — Whether the defendant knew that that was being recommended. Your Honor, Judge Gutierrez publishes the recommendation letter to the defense. That's what I was asking. Okay. And there was just no objection whatsoever at the district court when that condition was imposed. And, Your Honor, while we're on the subject, I just want to clarify one point from my prior counsel. This court did, in fact, affirm on plain error review in at least one instance this 2,000-foot restriction, and that is United States v. Paul LeBlond, and that's a case that was filed May 11, 2010.  Yes, Your Honor. United States v. Gerard Paul LeBlond, number 09-50140. And reading from that case, on plain error review, we also upheld a condition preventing a person from living within sight of a place used primarily by children. Although that condition was arguably less restrictive than the condition forbidding LeBlond from residing within 2,000 feet of a place primarily used by children, he has offered no evidence that the condition, in his case, involves a greater deprivation of liberty than is reasonably necessary for the purposes of supervised release. So I'm just bringing that to the court. Was that an unpublished decision? Unpublished decision, Your Honor. Who are the three judges? It was Clifton, Bybee, and Corman, district judge. Do you have a Westlaw cite on that? Your Honor, I have a ‑‑ I do. It's 378 Fed Appendix 711. And Westlaw ‑‑ We don't have any unpublished decisions. We don't. We don't view them as precedential. Yes, Your Honor. I was just bringing this ‑‑ It can be persuasive. Yes, Your Honor. And also, turning back to the sadism enhancement, I just want to clarify one thing. There was a discussion of this handy opinion out of the Eastern District of Pennsylvania, the Judge Weinstein. I just want to clarify for the record that that was not a child pornography case. That was a possession of a firearm by a felon case. And in that case, he was discussing whether or not the issue was whether or not the defendant knew that the gun was stolen and whether or not the two‑point enhancement for the stolen gun should apply. And the government would submit that this case is different than that case because the pictures are what they are on their face. Unlike a gun, you might not be able to tell if it's stolen. Except that we don't have them and the district court doesn't have them. And that's what's really weird about it. Your Honor, the probation officer made very clear in the PSR and set forth in paragraphs 44 and 44, here are the images that it relied on. And then it did an analysis of why it applied under United States versus Riordan. And there was no objection on that basis. If there was an objection on that basis, obviously the record would have been developed further by the court or by the government. But there was nothing to address because ‑‑ I guess the question is, does the ‑‑ I mean, I agree that it's been really a moving target to figure out what the intent argument is. But let's suppose that the intent argument were that the individual, the defendant has to intend these photos to be ‑‑ has to know that they are in fact sadistic and masochistic photos and intend to possess them knowing that. What about that? It seems like, Your Honor, suggesting a subjective test where we look at the photos from the perspective of the person who possesses them and have to determine whether or not they thought that the child is harmed in these pictures? When they thought that it fit the description sadistic and masochistic, whatever that term means. I just ‑‑ I think that's somewhat unworkable. And I think by the fact that they possess these photographs, these are photographs that they're interested in, and the photographs should be viewed objectively. And you should look at what ‑‑ it's not what the defendant intended. The guideline doesn't require intent. It's the subject matter of the photos that's important. Well, you say the guideline does require intent, though. The question is what's the intent? Your Honor, the guideline does not require intent at all. In fact, the guideline explicitly says that no intent is required for the sadistic enhancement. I could read from Application 2, the four points apply regardless of whether the defendant specifically intended to possess, access, with intent to review, or distribute such materials. Intent is not part of the guideline with respect to this enhancement. It's the character of the material. So if they had a pile of material, and they didn't know that in that pile was a sadistic photo, and they could demonstrate that if they knew it, they would have thrown it out right away, the guideline still applies? Your Honor, the government's position would be, assuming that they've already pled guilty to possession of some other types of child pornography, because if they didn't know they had pornography, they wouldn't be guilty of the offense in the first instance. But assuming they had some pile of pornography that wasn't sadistic. But that seems to me you have joined issue on the intent question, because you are saying essentially the same thing as Judge Weinstein rejected in that other case, i.e., they didn't have to know that this was even anything about this particular photo, even what it objectively showed. Your Honor, that's what the guideline says. They don't have to show. And I think that the way that that should be addressed in the cases is through the types of argument to show that, for whatever reason, that this guideline overstates this particular defendant's culpability, and they should move for a book or variance on that basis or for a sentence without. But on that theory, then nothing that's in any guideline could ever be challenged on any basis, any Constitution or other basis, because you could always say, but don't follow it. Your Honor, that's – I suppose what the guideline was, you know, you shouldn't be able to give any political speech, and you'd say, well, fine. You just argue that it shouldn't apply. Your Honor, that's – I mean, I don't – well, there are some guidelines that do require intent. For example, the Garner case cited by the defendant, which is for the obstruction enhancement. And in that case, the guideline explicitly includes the intent to obstruct justice before the two points could be applied for that. So that case focuses on intent and what – So your position is that, essentially, you can't challenge a guideline in constitutional grounds because you can just argue that it shouldn't be applied. Your Honor, I wouldn't take my position that far. I think there is certainly going to be some point where a guideline is so dispositive of somebody's case or increases it so far that it may be that there should be intent. But that's not the case here. This is a four-point enhancement for a sentence that's a very serious sentence. The guidelines are up in the 30s. And I'm not trying to minimize the gravity of this enhancement, but I don't think that this one would rise to that constitutional level just by way of not having the intent, especially where they have already admitted that they intended to possess the child pornography. Okay. You're over your time, too. So does anyone have any other questions? One not very important one, perhaps, but is it clear to you that the sentence was 121 months and not 120? Yes, Your Honor, it was 121 months. That's what's in the J&C, but the judge in pronouncing the sentence said 120 at some points and 121 at others, I think. Your Honor, I don't know what the judge was thinking. I've always thought it was 121 months. I believe that the court sentenced the defendant to the high end of the guidelines in this case, and that was 121 months. But I don't know what the court intended. I've always thought it was 121. But he said 120 at the sentencing, and then the J&C says it's 121. You go by what he orally announced, right? Yes, Your Honor. Okay. Thank you, counsel. United States v. Grigsby is submitted.
judges: Whyte, Wardlaw, Berzon